UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X

| | | |
|---|---|---|
| MICHAEL BUTCHER, | : | Case No.: _____ |
| | : | |
| Plaintiff, | : | **COMPLAINT** |
| | : | |
| -against- | : | **DEMAND FOR JURY TRIAL** |
| | : | |
| CNX MIDSTREAM PARTNERS LP., | : | |
| NICHOLAS J. DEIULIIS, CHAD A. | : | |
| GRIFFITH, DONALD W. RUSH, HAYLEY F. | : | |
| SCOTT, RAYMOND T. BETLER, JOHN E. | : | |
| JACKSON, and JOHN A. MAHER, | : | |
| | : | |
| Defendants. | : | |

---------------------------------------- X

Plaintiff, Michael Butcher ("Plaintiff"), by his undersigned attorneys, alleges upon

personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the

investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This is an action brought by Plaintiff against CNX Midstream Partners LP

("CNXM") and the members of CNXM's board of directors (collectively referred to as the "Board"

or the "Individual Defendants" and, together with CNXM, the "Defendants") for their violations

of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C.

§§ 78n(a) and 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection with the proposed

merger between CNXM and CNX Resources Corporation ("CNX Resources") (the "Proposed

Merger").

2.      On July 26, 2020, CNXM and CNX Resources entered into an Agreement and

Plan of Merger (the "Merger Agreement"), pursuant to which each CNXM common unit not

already owned by CNX Resources will be converted into the right to receive 0.88 shares of CNX

Resources common stock (the "Merger Consideration").

3.     On August 28, 2020, in order to solicit CNXM unitholders' consents to the Proposed Merger, Defendants authorized the filing of a materially incomplete and misleading definitive proxy statement (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.     In particular, the Proxy contains materially incomplete and misleading information concerning: (i) financial projections for CNXM, CNX Resources, and the pro forma combined company; and (ii) the valuation analyses performed by CNXM's financial advisor, Intrepid Partners, LLC ("Intrepid"), in support of its fairness opinion.

5.     The deadline for unitholders to decide whether to consent to the Proposed Merger is September 25, 2020 (the "Consent Deadline").  It is imperative that the material information that has been omitted from the Proxy is disclosed prior to the Consent Deadline so Plaintiff can make an informed decision on the Proposed Merger and properly exercise his corporate suffrage rights.

6.     For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Merger until the material information discussed herein is disclosed to CNXM's unitholders sufficiently in advance of the Consent Deadline or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges

violations of Sections 14(a) and 20(a) of the Exchange Act.

8.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over the Defendants by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman* 764 F.2d 1309, 1305 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* At 1316

9.      Venue is proper in this District under Section 27 of the Exchange Act and 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, CNXM's common units trade on New York Stock Exchange, which is headquartered in this District and  CNXM hired Intrepid as a financial advisor, which are also located in this District rendering venue in this District appropriate. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## **PARTIES**

10.     Plaintiff is, and at all relevant times has been, a unitholder of CNXM.

11.     Defendant CNXM is a master limited partnership focused on the ownership, operation, development, and acquisition of midstream energy infrastructure in the Appalachian Basin. CNXM's common units trade on the NYSE under the ticker symbol "CNXM".

12.     Individual Defendant Nicholas J. DeIuliis is the Chairman of the Board and the

3

Chief Executive Officer of CNXM. He is also a Director and the President and Chief Executive Officer of CNX Resources.

13.     Individual Defendant Chad A. Griffith is, and has been at all relevant times, the President, Chief Operating Officer, and a director of CNXM. He is also the Chief Operating Officer of CNX Resources.

14.     Individual Defendant Donald W. Rush is, and has been at all relevant times, a director and the Chief Financial Officer of CNXM. He is also the Chief Financial Officer of CNX Resources.

15.     Individual Defendant Hayley F. Scott is, and has been at all relevant times, a director of CNXM. She is also the Vice President of Financial Planning and Analysis of CNX Resources.

16.     Individual Defendant Raymond T. Betler is, and has been at all relevant times, a director of CNXM.

17.     Individual Defendant John E. Jackson is, and has been at all relevant times, a director of CNXM.

18.     Individual Defendant John A. Maher is, and has been at all relevant times, a director of CNXM.

19.     The Individual Defendants referred to in ¶¶ 12-18 are collectively referred to herein as the "Individual Defendants" and/or the "Board", and together with CNXM they are referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### I.     Background and the Proposed Merger

20.      CNXM, formerly CONE Midstream Partners LP, is a master limited partnership

formed by CONSOL Energy Inc. (CONSOL) and Noble Energy, Inc. (Noble Energy) that owns, operates, develops, and acquires natural gas gathering and other midstream energy assets to service CONSOL's and Noble Energy's production in the Marcellus Shale in Pennsylvania and West Virginia. Its assets include natural gas gathering pipelines and compression and dehydration facilities, as well as condensate gathering, collection, separation and stabilization facilities. It operates through three segments: Anchor Systems, Growth Systems and Additional Systems. Its Anchor Systems include developed midstream systems, including its three midstream systems (the McQuay System, the Majorsville System and the Mamont System) and related assets. Its Growth Systems are located in the dry gas regions of its dedicated acreage.

21.     CNX Resources is an oil and gas company focused on the exploration, development, production, gathering, processing, and acquisition of natural gas properties primarily in the Appalachian Basin. The company develops and explores for natural gas in Appalachia (Pennsylvania, West Virginia, Ohio, and Virginia). Its primary focus is in the development of its Marcellus Shale acreage and delineation and development of Utica Shale acreage. Its operations are located throughout Appalachia. CNX owns or operates approximately 2,600 miles of natural gas gathering pipelines as well as several natural gas processing facilities. CNX Resources consists of two principal business divisions: Exploration and Production (E&P) and Midstream. The principal activity of the E&P Division includes four segments which, is to produce pipeline natural gas for sale primarily to gas wholesalers.

22.     On July 27, 2020, CNXM and CNX Resources issued a joint press release announcing the Proposed Merger, which states in relevant part:

### CNX Resources Corporation to Acquire Remaining Public Stake in CNX Midstream Partners LP

•     Improves long-term financial stability of combined entity

- Creates lowest cost Appalachia producer

- Increases the cumulative free cash flow (FCF) for CNX

- 15% premium to the 30-day average exchange ratio

- Transaction expected to close in Q4 2020

**PITTSBURGH, PA (July 27, 2020)** – CNX Resources Corporation (NYSE: CNX) ("CNX") and CNX Midstream Partners LP (NYSE: CNXM) ("CNX Midstream" or the "Partnership") today announced that they have entered into a definitive merger agreement pursuant to which CNX will acquire all of the outstanding common units of CNX Midstream that it does not already own in exchange for CNX common stock valued at approximately $357 million, based on the most recent closing price of CNX common stock.

Under the merger agreement, each outstanding common unit of CNX Midstream that CNX does not already own will be converted into 0.88 shares of CNX common stock, representing a 15% premium to the average exchange ratio during the 30 trading days ended July 24, 2020.

"We believe that this take-in transaction of CNX Midstream Partners is the optimal solution for all relevant stakeholders given the near- and long-term view of the MLP market," commented Nicholas J. DeIuliis, president and CEO. "We expect the combined entity to be an even stronger company with a lower cost of capital and increased investable free cash flow."

Don W. Rush, CFO, added, "Following the completion of the transaction, CNX is expected to be the lowest cost producer in the Appalachian Basin, with increased operational flexibility and basin leading operational metrics. Stockholders of CNX and unitholders of CNX Midstream are expected to benefit from a combination of synergies including improved equity trading liquidity, enhanced financial flexibility to optimize cash flows, and an improved credit profile."

**Additional Transaction Terms and Details**

Pursuant to the terms of the merger agreement, CNX will acquire all of the approximately 42.1 million outstanding common units of CNX Midstream that it does not already own at a fixed exchange ratio of 0.88 shares of CNX common stock for each publicly held common unit of CNX Midstream. CNX Midstream common units will no longer be publicly traded after the transaction. In aggregate, CNX will issue approximately 37 million shares in connection with the proposed transaction, representing approximately 17 percent of the total shares outstanding of the pro forma combined entity.

Following completion of the transaction, all senior notes of CNX Midstream will remain outstanding and no additional payments will be made to CNX in connection with the elimination of the incentive distribution rights transaction from January of this year. The transaction terms were negotiated, reviewed and approved by the Conflicts Committee of the CNXM Board and approved by the CNXM Board. The CNX Midstream Conflicts Committee is composed of the independent members of the CNXM Board. The Board of Directors of CNX also approved the merger agreement.

## II.      The Proxy Omits Material Information

23.      On August 28, 2020, Defendants filed the materially incomplete and misleading Proxy with the SEC.  The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to CNXM's unitholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents and/or omits material information that is necessary for CNXM's unitholders to make an informed decision in connection with the Proposed Merger.

The Misleadingly Incomplete Financial Projections

24.      First, the Proxy omits critical financial projections, including the net income projections for both CNXM and CNX Resources (the "Net Income Projections"). Defendants elected to summarize multiple sets of financial projections, but they excised and failed to disclose the readily available Net Income Projections. By disclosing certain projections in the Proxy and withholding the Net Income Projections, Defendants render the summary tables of projections on pages 49-50 of the Proxy materially incomplete and provide a misleading valuation picture of CNXM and CNX Resources.  Simply put, net income projections are irreplaceable when it comes to fully, fairly, and accurately understanding a company's projections and value.

25.      Second, the Proxy states that in preparing its fairness opinion, Intrepid: reviewed the synergies resulting from the Proposed Merger; discussed the potential benefits of the Proposed Merger with both parties; and reviewed and analyzed the pro forma impacts of the Proposed

Merger. Moreover, the "the potential future growth and synergies resulting from the Merger" was one of the positive, material reasons that the CNXM Conflicts Committee approved and recommended the Proposed Merger to the CNXM Board. Yet no synergies valuations or pro forma projections are provided to CNXM unitholders, despite being touted by all the decisionmakers involved in the process. This information is critical to CNXM unitholders as it speaks directly to the question being presented to them in deciding whether to consent to the Proposed Merger: is the current ownership in standalone CNXM worth more or less than a smaller stake in the combined entity. Accordingly, without this information, the statements made concerning the synergies are rendered misleadingly incomplete.

26.     Unlike poker where a player must conceal his unexposed cards, the object of a proxy statement is to put all one's cards on the table face-up. In this case only some of the cards were exposed—the others were concealed. If a proxy statement discloses financial projections and valuation information, such projections must be complete and accurate.  The question here is not the duty to speak, but liability for not having spoken enough.  With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. Accordingly, Defendants have disclosed some of the projections relied upon by Intrepid and the Board but have omitted the Net Income Projections and the pro forma/synergy valuation. These omissions render the summary of the projection tables and each entity's financial picture in the Proxy misleadingly incomplete.

The Misleadingly Incomplete Summary of Intrepid's Fairness Opinion

27.     The Proxy describes Intrepid's fairness opinion and the various valuation analyses performed in support of their opinion.  Defendants concede the materiality of this information in

citing Intrepid's fairness opinion and their valuation analyses among the "material" factors considered in recommending the Proposed Merger. Proxy at 44; *see also* Proxy at 55 ("*Summary of Material Financial Analyses*"). However, the summary of Intrepid's fairness opinion and analyses provided in the Proxy fails to include key inputs and assumptions underlying the analyses. Without this information, as described below, CNXM unitholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Intrepid's fairness opinion in determining whether to consent to the Proposed Merger. *See* Proxy at 77 ("Considering the data set forth in the tables below without considering the full narrative description of the analyses, including the methodologies and assumptions underlying the analyses, could create a misleading or incomplete view of the financial and comparative analyses performed by Intrepid."). This omitted information, if disclosed, would significantly alter the total mix of information available to CNXM's unitholders.

28. In summarizing the CNXM *Comparable Company Trading Analysis,* the CNXM *Precedent Transactions Analysis* and the CNX Resourses *Comparable Company Trading Analysis*, the Proxy fails to disclose the individual multiple of each company or transaction utilized in the analyses. A fair summary of a comparable companies or transactions analysis requires the disclosure of the individual multiple for each company or transaction used in the analysis. Merely providing a mean and median of the multiples that a banker calculated without any further information is insufficient, as unitholders are unable to assess whether the banker applied appropriate multiples, or, instead, applied unreasonably low multiples in order to present the Merger Consideration in the most favorable light. Accordingly, the omission of this material information renders the summary of this analyses provided in the Proxy misleading.

29. Similarly, in summarizing *Precedent Premiums Paid Analysis*, the Proxy fails to

disclose the individual premiums observed for each transaction. The Proxy simply states the mean and median. This disclosure is insufficient and renders the summary misleadingly incomplete.

30.     In summarizing the *Discounted Cash Flow Analysis* prepared by Intrepid for each of CNXM and CNX Resources, the Proxy fails to disclose the following key information: (i) the unlevered free cash flows used in the analysis, (ii) the inputs and assumptions underlying the discount rate ranges (including CAPM components); (ii) the reason Intrepid used comparable companies in determining the discount rates instead of using each entity's actual cost of capital; (iii) CNXM's net debt and the present value of CNXM's aggregate future IDR elimination payments used to adjust their equity value; (iv) the estimated value of the CNXM Limited Partner Interests, the present value of CNXM's aggregate future IDR elimination payments, and the net debt used to adjust CNX Resources' equity value; and (v) the terminal values calculated.

31.     These key inputs are material to CNXM unitholders, and their omission renders the summary of the *Discounted Cash Flow Analysis* incomplete and misleading. As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…" Id.  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques.  This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion unless full disclosure is made of the various inputs in the valuation process, the weight

> assigned for each, and the rationale underlying these choices. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

Id. at 1577-78.

32.     Without the above-omitted information CNXM unitholders are misled as to the reasonableness or reliability of Intrepid's analysis, and unable to properly assess the fairness of the Proposed Merger.  As such, these material omissions render the summary of the *Discounted Cash Flow* Analyses included in the Proxy misleadingly incomplete.

33.     Finally, in the *Exchange Ratio Summary*, the Proxy fails to explain why Intrepid calculated the implied exchange ratio ranges by comparing the low end of the valuation range for CNXM units to the high end of the valuation range for CNX Resources stock. The more natural conclusion would be to compare the low ends to the low ends and the high ends to the high ends. However, by performing that straight comparison, the Merger Consideration would fall outside the range of fairness for the *Discounted Cash Flow* Analyses—the most important analysis. [1]

34.     In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the Consent Deadline, Plaintiff will be unable to make an informed decision regarding the Proposed Merger, and is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

---

[1]     "Discounted cash flow (DCF) forms the core of finance…. Though professionals may employ other methods of valuation, such as relative valuation and the contingent claims approach, DCF forms the basis for all other valuations. Underscoring the importance of DCF valuation is the fact that it provides a linchpin to link various fields of finance." "Developing an Automated discounted Cash Flow Model." The Valuation Handbook: Valuation Techniques from Today's Top Practitioners. Ed. Rawley Thomas and Benton E. Gup. Hoboken: John Wiley & Sons, 2010. 110.

## COUNT I

### Against All Defendants for Violations of Section 14(a) of the Exchange Act

35.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

37.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

38.     The omission of information from a proxy will violate Section 14(a) if other SEC regulations specifically require disclosure of the omitted information.

39.     Defendants have issued the Proxy with the intention of soliciting CNXM's common unitholders' support for the Proposed Merger.  Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) financial projections for CNXM, CNX Resources, and the pro forma combined company; and (ii) the valuation analyses performed by

Intrepid in support of its fairness opinion.

40.     In so doing, Defendants made misleading statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to CNXM's unitholders although they could have done so without extraordinary effort.

41.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve the Proposed Merger and solicit unitholder consent; indeed, the Proxy states that Intrepid reviewed and discussed their financial analyses with the CNXM Conflicts Committee, who presented the same information to the full Board, and further states that the Board considered the financial analyses provided by Intrepid, as well as their fairness opinion and the assumptions made and matters considered in connection therewith.  Further, the Individual Defendants were privy to and had knowledge of the financial projections and the details surrounding the process leading up to the signing of the Merger Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.  Indeed, the Individual Defendants were required to, separately, review Intrepid's analyses in connection with their

receipt of the fairness opinion, question Intrepid as to their derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

42.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as CNXM's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of CNXM's financial projections.

43.     CNXM is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

44.     The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to make an informed decision on the Proposed Merger if such misrepresentations and omissions are not corrected prior to the special meeting of CNXM's unitholders.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.


//


//

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

45.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46.     The Individual Defendants acted as controlling persons of CNXM within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of CNXM, and participation in and/or awareness of CNXM's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of CNXM, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

47.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

48.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of CNXM, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger.  They were thus directly involved in preparing this document.

49.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger

Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

50.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

51.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

52.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily enjoining Defendants and all persons acting in concert with them from consummating the Proposed Merger, until Defendants disclose the material information discussed above which has been omitted from the Proxy;

B.     Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


Dated: September 1, 2020                    **MONTEVERDE & ASSOCIATES PC**

                                            _/s/ Juan E. Monteverde_
                                            Juan E. Monteverde (JM-8169)
                                            The Empire State Building
                                            350 Fifth Avenue, Suite 4405
                                            New York, NY 10118
                                            Tel: (212) 971-1341
                                            Fax: (212) 202-7880
                                            Email: jmonteverde@monteverdelaw.com

                                            *Attorneys for Plaintiff*